1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
                                  AT SEATTLE
9

10    ANNE K. BLOCK,                          CASE NO. C08-1850JLR

11                    Plaintiff,              ORDER GRANTING
                                              DEFENDANT'S MOTION TO
12            v.                              DISMISS AND/OR FOR
                                              SUMMARY JUDGMENT
13    HILDA L. SOLIS[1],
                                                 AND
14                    Defendant.
                                              ORDER GRANTING
15                                            PLAINTIFF'S MOTION FOR
                                              LEAVE TO FILE
16                                            SUPPLEMENTAL
                                              DECLARATION
17

18

19

20

21    _____

22        [1] Hilda L. Solis, who was confirmed as U.S. Secretary of Labor in February 2009, is
      substituted for Elaine Chao, the former U.S. Secretary of Labor.  *See* Fed. R. Civ. P. 25(d).

ORDER- 1

## I.    INTRODUCTION

This matter comes before the court on the motion to dismiss and/or for summary judgment (Dkt. # 23) filed by Defendant Hilda L. Solis, U.S. Secretary of Labor ("DOL").  The DOL first requests that the court dismiss Plaintiff Anne K. Block's disability discrimination claims based on her alleged failure to exhaust her administrative remedies with respect to those claims.  The DOL next requests that the court grant summary judgment in its favor with respect to Ms. Block's retaliation claims.  Having reviewed the motion, as well as all papers filed in support and opposition, and having heard the arguments of counsel on May 14, 2010, the court GRANTS the motion (Dkt. # 23).  The court also GRANTS Ms. Block's motion for leave to file supplemental declaration (Dkt. # 47).

## II.    BACKGROUND

This action involves allegations that employees of the DOL discriminated against Ms. Block on the basis of her hearing impairment, failed to grant her request for an accommodation of her hearing impairment, and ultimately discriminated and retaliated against her by terminating her employment after she filed informal and formal Equal Employment Opportunity ("EEO") complaints.

### A.    Employment at the U.S. Department of Labor

On November 26, 2006, Ms. Block began her employment as a workers' compensation claims examiner ("claims examiner") for the DOL's Office of Workers' Compensation Programs, Energy Employees Occupational Illness Compensation Program ("EEOICP"), in Seattle, Washington.  (Block Decl. (Dkt. # 36) ¶ 13; Long Decl.

1  (Dkt. # 30) ¶ 2.)  The mission of the EEOICP is to provide compensation and benefits to

2  eligible nuclear weapons workers of the U.S. Department of Energy.  (Long Decl. ¶ 1.)

3  After starting work, Ms. Block remained on a one-year probationary period, which ran

4  from November 26, 2006, to November 25, 2007.  (*Id*. ¶ 2; *see* Block Decl. ¶ 14.)

5  Christy Long, the district director of the EEOICP at the time of Ms. Block's employment,

6  terminated Ms. Block's employment effective as of November 23, 2007.  (Long Decl. ¶ 2

7  & Ex. 1.)

8  **B.    Hearing Impairment**

9          Ms. Block identifies herself as an individual living with a hearing disability.

10 (Block Decl. ¶ 3.)  She explains that her hearing difficulties manifested in 2001 and

11 eventually became more substantial and permanent as the result of an initial medical

12 misdiagnosis and a later error during corrective surgery.  (*Id*. ¶¶ 3, 7-8.)  Ms. Block states

13 that she has no hearing in her left ear and has significantly reduced hearing in her right

14 ear.  (*Id*. ¶ 8.)  Ms. Block characterizes her hearing impairment as having adversely

15 affected not only her ability to hear, but also other aspects of her life, including her

16 walking, sleeping, eating, and speech.  (*Id*. ¶ 10.)  She states that her hearing impairment

17 is particularly severe when she is placed in an environment with background noise, which

18 often requires her to ask follow-up questions or communicate via email.  (*Id*. ¶ 12.)

19 **C.    Initial Phase of Employment**

20         On the first day of her employment, Ms. Block completed a variety of forms for

21 Joyce Vail, operations manager, and indicated on this paperwork that she had a hearing

22 impairment.  (*Id*. ¶ 17.)  After her orientation, Ms. Block began working in earnest in

ORDER- 3

mid-December 2006.  (*Id.* ¶¶ 18-19.)  Ms. Block was stationed in a closed cubicle on the sixth floor of the office building.  (*Id.* ¶ 19.)  Throughout December, January, and February, Ms. Block worked on case files and was instructed to prepare recommended decisions.  (*Id.* ¶ 20.)

**D.   Interactions With Ms. Hornback**

In March 2007, F. Margo Hornback, a senior claims examiner, was assigned to review Ms. Block's work.  (*Id.* ¶ 24; Hornback Decl. (Dkt. # 26) ¶ 2.)  Senior claims examiners review the work of claims examiners, such as Ms. Block, and provide mentoring to assist them in meeting the relevant standards and goals.  (Hornback Decl. ¶ 2.)  Ms. Hornback and Ms. Block did not have a positive working relationship.  As Ms. Block tells it, Ms. Hornback "declared her disdain for" Ms. Block in mid-March (Block Decl. ¶ 25), and their relationship went from bad to worse over the subsequent months: Ms. Block describes an interaction between the two regarding their divergent approaches to the EEOICP claims process (*id.* ¶¶ 25-26); she states that Ms. Hornback sent her a personal email about Ms. Hornback's "rotten childhood" (*id.* ¶ 27); and she states, without elaboration, that Ms. Hornback told to her that she did not like women (*id.* ¶ 29).  None of these incidents expressly involved Ms. Block's hearing impairment.

In May 2007, Ms. Block began to suspect that other employees knew of her hearing impairment.  Ericka Burkhart, one of Ms. Hornback's co-workers, came into Ms. Block's general work area, "asking fellow examiners if anyone was deaf in their left ear who would be willing to trade their head set with her."  (*Id.* ¶ 30.)  It appears that Ms. Burkhart made this comment to Ms. Hornback, among others.  (*Id.*)  Ms. Block states that

1   until that time she had no reason to believe that anyone other than Ms. Vail knew about

2   her hearing impairment.  (*Id.*)  In response, Ms. Block immediately entered the office of

3   her manager, Kelly Kotada, and related the incident to him.  (*Id.*)  She complained to

4   him: "Hornback is telling other people things about me that she should not have

5   knowledge of or access to."  (*Id.*)  Ms. Block states that Mr. Kotada replied that Ms.

6   Hornback had told him that Ms. Block had a hearing impairment.  (*Id.*)  Mr. Kotada did

7   not know how Ms. Hornback had learned about Ms. Block's hearing impairment.  (*Id.*)

8          Ms. Hornback allegedly began harassing Ms. Block after she complained to Mr.

9   Kotada.  (*Id.* ¶ 31.)  As Ms. Block states: "After I complained about Hornback, she

10  refused to speak with me, and when I had questions she would repeatedly scream at me

11  when responding and refused to respond to my email questions."  (*Id.*)  Ms. Hornback

12  allegedly slowed her processing of Ms. Block's work product, which caused Ms. Block's

13  caseload to come to a "virtual standstill" (*id.* ¶ 32), and Ms. Hornback allegedly made

14  "condescending statements" to Ms. Block, such as "you [sic] not cut out for this job,"

15  "you should resign," "I have eyes inside here," "you should have stayed under the radar,"

16  and "I heard you complained about me!  I will make sure you get fired for this" (*id.* ¶ 33).

17  Ms. Block states that two of Ms. Hornback's friends, David Ronquillo, a manager, and

18  Karen Waller, a senior claims examiner, began making allegedly untruthful statements

19  about her leaving work early.  (*Id.* ¶ 34.)

20         Ms. Block requested that Mr. Kotada transfer her to a new senior claims examiner.

21  (*Id.* ¶ 36.)  Her request, however, was denied by Ms. Long.  (*Id.*)  Ms. Block states that

22  she also approached Mr. Kotada several times between May 2007 and July 2007 to

ORDER- 5

1   complain about Ms. Hornback's alleged behavior.  (*Id.*)  She received "no managerial

2   action" in response.  (*Id.* ¶ 39.)

3          In July 2007, Ms. Hornback allegedly entered Ms. Block's cubicle, grabbed her by

4   the shoulders, and shook her.  (*Id.* ¶ 37.)  Ms. Block was "so startled that [she] began

5   shaking endlessly."  (*Id.*)  She immediately left work and took several personal days off.

6   (*Id.*)

7          In mid-July 2007, Ms. Block began looking for other employment.  (*Id.* ¶ 39;

8   Kotada Decl. (Dkt. # 29) ¶ 11.)  Mr. Kotada agreed to be a reference for Ms. Block.

9   (Kotada Decl. ¶ 11.)  In an email to Ms. Block, Mr. Kotada stated: "I will be more than

10  happy to be a reference for you, although I would hate to lose you if you decide on

11  another position."  (Davis Decl. (Dkt. # 35) Ex. 1.)

12         On August 17, 2007, Ms. Block sent an email to Ms. Hornback, in which Ms.

13  Block wrote: "Please stop harassing me."  (Kotada Decl. Ex. 5.)  The email exchange

14  arose in the context of a particular claimant's file and Ms. Hornback's comments about

15  how Ms. Block had handled the case.  (*Id.* ¶ 12.)  Mr. Kotada was copied on Ms. Block's

16  email to Ms. Hornback, and he forwarded a copy of the email to Ms. Long.  (*Id.*)

17  **E.    Ms. Block's First Informal EEO Complaint**

18         On or around August 28, 2007, Ms. Block filed an informal EEO complaint

19  ("Informal EEO Complaint") with the Civil Rights Center of the U.S. Department of

20

21

22

1    Labor.[2]  (Block Decl. ¶ 40; Mittet Decl. (Dkt. # 24) Ex. 2; Barry-Perez Decl. (Dkt. # 33)

2    ¶ 2.)  On the cover sheet, Ms. Block indicates that the bases of her complaint are age

3    ("40+") and disability ("hearing").[3]  (Mittet Decl. Ex. 2 at 5.)  In her Informal EEO

4    Complaint, Ms. Block focuses on the actions of Ms. Hornback:

5         I, Anne Kathleen Block, an employee with the US Department of Labor,
          Energy Employees Occupational Injury Compensation Program, . . . hereby
6         wish and intend to pursue a claim of discrimination against a senior claim's
          [sic] examiner Margo Hornback (Hornback), who is also employed in the
7         same office, alleging discrimination based upon a presumed disability
          and/or actual disability which has caused a hostile work environment.

8
     (Id. Ex. 2 at 6 ¶ 1.)  She further explains:
9
          From May to present, Hornback has created a [sic] environment that is
10        hostile due to my disability, or on her presumption thereof, by screaming at
          me in front of other examiners and by refusing to process my work in a
11        timely manner, falsifying papers, misfiling claimant's [sic] files inside my
          number block, and destroying claimant's [sic] documents all in [sic]
12        attempt to discredit me based on my initial complaint against her.

13

14   ─────────────────────
       [2] The record includes two different version of Ms. Block's Informal EEO Complaint.
15   (Compare Mittet Decl. Ex. 2 (signed August 27, 2007, and emailed August 28, 2007) with Block
     Decl. Ex. 3 (signed August 21, 2007).)  The two versions are not substantially different, but the
16   version submitted by the DOL includes two additional paragraphs, as well as other minor
     changes.  Without more, the court will cite to the Informal EEO Complaint attached to the
17   declaration of Ms. Mittet as it contains additional allegations and was submitted at a later date.
     The court emphasizes, however, that it relies on both complaints in the course of its ruling;
18   allegations raised by Ms. Block in either version will be considered.

       [3] In her declaration, Ms. Block states:
19
          I filled out a form titled 'Informal complaint' and to the best of my recollection, I
20        checked four boxes; disability, age, gender, and reprisal.  I checked all four
          because I am a woman, over the age of forty, with major hearing and physical
21        limitations, and believed that I was being retaliated against because I opposed
          Hornback's discriminatory practices.

22   (Block Decl. ¶ 40.)  Ms. Block, however, does not submit a copy of the cover sheet.

ORDER- 7

1 (*Id*. Ex. 2 at 7 ¶ 9.)  Vic Sung of the Civil Rights Center was assigned to investigate Ms.

2 Block's Informal EEO Complaint.  (Block Decl. ¶¶ 40-41; Kotada Decl. ¶ 13; Long Decl.

3 ¶ 6.)  Ms. Block also contacted Cherylann F. DeLaurentis, an Equal Opportunity

4 Specialist with the Civil Rights Center.  Mr. Sung spoke with both Mr. Kotada and Ms.

5 Long, and recommended to them that Ms. Hornback be replaced by a different senior

6 claims examiner.  (Block Decl. ¶ 41; Kotada Decl. ¶ 14; Long Decl. ¶ 6.)  Ms. Block was

7 transferred to a different unit, and Ms. Waller replaced Ms. Hornback as Ms. Block's

8 senior claims examiner.  (Block Decl. ¶ 41; Kotada Decl. ¶ 14; Waller Decl. (Dkt. # 32) ¶

9 3.)

10 **F.      Transfer of Ms. Block from the Sixth Floor to the Fifth Floor**

11         Ms. Block was moved from the sixth floor to the fifth floor of the building as part

12 of her transfer to a new unit.  (Block Decl. ¶¶ 45-47; Kotada Decl. ¶¶ 14-15.)  She

13 learned of the move from a co-worker, and immediately sent an email to Mr. Kotada

14 protesting the move.  (Block Decl. ¶ 45.)  The problem, in Ms. Block's view, arose from

15 the fact that she was being moved from a closed cubicle with acoustic barriers to an open

16 table office space without acoustic barriers.  (*Id*. ¶ 47.)

17         On September 5, 2007, Ms. Block met with Ms. Long and Mr. Kotada to discuss

18 her transfer from the sixth floor to the fifth floor.  (*Id*. ¶ 46; Long Decl. ¶ 8.)  Ms. Block

19 states that she "requested to remain inside a closed cubical work station."  (Block Decl. ¶

20 46.)  Although it was Ms. Long's impression that Ms. Block "was agreeable to this

21 move," Ms. Long states that Ms. Block "implied that she had problems filtering out

22 background noises which made it difficult for her to hear."  (Long Decl. ¶ 8.)

1    Nevertheless, the move went forward, and Ms. Block states that she "virtually had no

2    way of communicating other than email."  (Block Decl. ¶ 47.)

3    **G.   Ms. Block's Amended Informal EEO Complaint**[4]

4          On September 24, 2007, Ms. Block filed an amended informal EEO complaint

5    ("Amended Informal EEO Complaint").  (2d Block Decl. (Dkt. # 47) Ex. 1.)  In her

6    Amended Informal EEO Complaint, Ms. Block writes:

7          I, Anne Kathleen Block, an employee with the US Department of Labor,
          Energy Employees Occupational Illness Compensation Program, . . .
8          hereby wish and intended to pursue a claim of discrimination against the
          US Department of Labor in Seattle, WA, my former senior claim's [sic]
9          examiner, Margo Hornback (Hornback), Seattle Asst. District Officer Tracy
          Johnson, David Ruijuillo, and Randy Dempster, alleging discrimination
10         based upon a presumed disability and/or actual disability.  In addition, I
          wish to file a claim against Tracy Johnson and Randy Dempster,
11         collectively, for retaliating against [sic] for filing my initial complaint with
          the DOL EEO counselor.
12
     (*Id*. Ex. 1 at 6 ¶ 1.)  Ms. Block also addresses her move to the fifth floor.  She writes:
13
14         On 09/05/2007, I was told that I would be moving to a new unit.   On
          09/06/007, [sic] I was moved as the direct result of the complaint that I
          filed with Vic Sung, the Regional DOL EEO Counselor.  This move was a
15         retaliatory action taken against me for filing an EEO Complaint.

16   (*Id*. Ex. 1 at 8 ¶ 10.)  Ms. Block does not name either Mr. Kotada or Ms. Long as

17   alleged perpetrators in her Amended Informal EEO Complaint.

18         In late September 2007, Ms. Block contacted Ms. DeLaurentis to rescind

19   her agreement to mediate and to obtain a right to file letter.  (*Id*. ¶ 51; *see* Barry-

20   _____

21        [4] As discussed in Part III.A, the court grants Ms. Block's motion for leave to file
     supplemental declaration.  The court therefore will consider Ms. Block's second declaration and
22   her Amended Informal EEO Complaint.

1    Perez Decl. Ex. 1.)  By letter dated September 25, 2007, the Civil Rights Center

2    confirmed that it had rescinded Ms. Block's request to participate in mediation and

3    advised Ms. Block that she had 15 days within which to file a formal EEO

4    complaint after receipt of the letter.  (Barry-Perez Decl. Ex. 1; Block Decl. ¶ 53 &

5    Ex. 4.)

6           On October 11, 2007, Ms. Block filed a formal EEO complaint ("Formal EEO

7    Complaint") with the Civil Rights Center.[5]  (Block Decl. ¶ 53 & Exs. 5-6.)  The Civil

8    Rights Center did not respond to Ms. Block's Formal EEO Complaint.  In her Formal

9    EEO Complaint, Ms. Block expands her focus beyond Ms. Hornback and alleges claims

10   for both disability discrimination and retaliation.  (*Id.* Ex. 5.)  On the cover sheet, Ms.

11   Block indicates that the bases of her complaint are religion, sex, age, disability, and

12   reprisal.  (*Id.* Ex. 5 at 48.)  In her Formal EEO Complaint, Ms. Block writes:

13          I, Anne Kathleen Block, an employee with the US Department of Labor,
            Energy Employees Occupational Illness Compensation Program . . . hereby
14          wish and intend to pursue a claim of discrimination against the US
            Department of Labor in Seattle, WA, my former senior claim's [sic]
15          examiner, Margo Hornback (Hornback), Seattle Asst. District Officer Tracy
            Johnson, David Ruijillo, and Randy Dempster, alleging discrimination
16          based upon a presumed disability and/or actual disability.  In addition, I
            wish to file a claim against Tracy Johnson and Randy Dempster,
17          collectively, for retaliating against [sic] for filing my initial complaint with
            the DOL EEO counselor.

18

19   _____

20          [5] The DOL originally took the position that Ms. Block had not filed a formal EEO
     complaint.  (Mot. at 10, 14.)  After reviewing the evidence submitted by Ms. Block, however, the
21   DOL reversed course.  The DOL now states that Ms. Block's Formal EEO Complaint "was
     evidently lost and not logged into the DOL's data base.  After receiving the exhibit showing an
22   actual date of receipt, DOL searched and found the complaint."  (Reply (Dkt. # 42) at 2 n.2.)

ORDER- 10

1   (*Id*. Ex. 5 at 49 ¶ 1.)  In general, the complaint focuses on the alleged harassment of Ms.

2   Block by Ms. Hornback and others.

3        Ms. Block also complains about her transfer to the fifth floor in her Formal EEO

4   Complaint.  She writes:

5       10.  On 09/05/2007, I was told that I would be moving to a new unit.  I
    objected to this move for two reasons: the table that I was being moved to
6   was 100% open space verses [sic] my former space that has acoustical
    barriers to block out background noise, and the table did not have a
7   keyboard tray (and [sic] suffer from repetitive stress syndrome) and if
    moved I would not be able to hear clients in an open area verses [sic] the
8   closed area that I had, and the fact that I suffer from Repetitive Stress
    syndrome and the new table does not have a [sic] ergonomic adjustable
9   keyboard tray as did my form [sic] cubical, I was still ordered to move 24
    hours later.  Since that time I was given a keyboard.

10

11      11.  Retaliation 1: on 09/06/2007, I was moved as the direct result of the
    complaint that I filed with Vic Sung, the Regional DOL EEO Counselor.
12  This move was a retaliatory action taken against me for filing an EEO
    Complaint.

13  (*Id*. Ex. 5 at 51 ¶¶ 10-11.)  Ms. Block does not name either Mr. Kotada or Ms. Long as

14  alleged perpetrators in her Formal EEO Complaint.

15       In mid-October 2007, Ms. Hornback visited the fifth floor.  (*Id*. ¶ 54; Hornback

16  Decl. ¶ 13.)  Ms. Block states that Ms. Hornback, "within 3 feet from [Ms. Block's] work

17  station," made comments to Ms. Block's new senior claims examiner.[6]  (Block Decl. ¶

18  54.)  Ms. Block does not specify the substance of these comments, but relates that the

19  comments prompted her to email Ms. Long.  (*Id*.; Long Decl. Ex. 2.)  In this email, Ms.

20                            

21      [6] The record remains unclear as to the nature of Ms. Hornback's alleged statements.  In
    her briefing, Ms. Block characterizes Ms. Hornback as discussing the quality of Ms. Block's
22  work, although she does not point to evidence to support this characterization.  (Resp. (Dkt. # 34)
    at 8.)

1    Block informed Ms. Long that she had filed her Formal EEO Complaint: "With a formal

2    EEO complaint now pending in DC against Margo, I am respectfully requesting that she

3    refrain from further comments to my new senior." (Long Decl. Ex. 2.)  Ms. Long

4    scheduled a meeting with Ms. Block.  (Block Decl. ¶ 54.)  At the meeting, Ms. Long

5    allegedly stated: "soon you won't have to worry about Hornback." (*Id*.)  Ms. Block

6    interpreted this statement as a "direct attack on [Ms. Block's] future employment with the

7    DOL." (*Id*.)

8    **H.    Ms. Block's New Work Load**

9           In October 2007, Ms. Block's new manager, Rayleen Kirkland, assigned

10   additional, more complex work to Ms. Block. (*Id*. ¶ 55.)  Ms. Block explains that claims

11   examiners were assigned cases based on the last two digits of a claimant's social security

12   number. (*Id*.)  She states her understanding that ordinarily claims examiners with less

13   than one year of experience would be assigned one social security digit, and claims

14   examiners with two years of experience would be assigned two social security digits, "but

15   never three." (*Id*.)  Ms. Kirkland, however, "assigned three new social security digits" to

16   Ms. Block (*id*.), which Ms. Block viewed as a difficult caseload:

17           My new case files were some of the most complex cases that I had ever
             worked on, and were files located on the 6th floor.  This was unusual
18           because an examiner's case files were always located on the floor for which
             the examiner worked.
19

20   (*Id*. ¶ 56.)  Furthermore, Ms. Block states that the worksheets associated with her new

21   case files "consistently contained incorrect information." (*Id*. ¶ 57.)  She complained

22

1  about this type of incorrect information, but "[n]o action was taken to address [her]

2  complaints."  (*Id*.)

3  **I.      Termination of Ms. Block's Employment**

4           In late October 2007, Ms. Long began considering whether to terminate Ms.

5  Block's employment.  (Long Decl. ¶ 10; Davis Decl. Ex. 4.)  She ultimately decided to

6  terminate Ms. Block's employment during her probationary period.  Pursuant to a letter

7  from Ms. Long dated November 20, 2007, the DOL terminated Ms. Block's employment

8  effective on November 23, 2007.  (Long Decl. ¶ 2 & Exs. 1, 4.)  Ms. Long informed Ms.

9  Block that she had decided to terminate her employment because Ms. Block's

10  performance during her probationary period had "not been acceptable."  (*Id*. Ex. 4.)  Ms.

11  Long explains the basis for her decision:

12           You have received training and guidance continuously during your trial
         period.  However, you have failed to accurately and consistently apply the
13       training and guidance you received and your performance has not
         improved.  You did not receive a rating of record for your job performance
14       for the period of December 21, 2006 through September 30, 2007 because
         your performance did not meet the expectations listed in elements stated in
15       the performance plan.  In lieu of your receipt of a rating of record for the
         period of December 21, 2006 through September 30, 2007, I have decided
16       to terminate your employment during your probationary period.

17           The trial period is a means of measuring the ability of an employee to
         perform the work of a position and, as such, is an essential and integral part
18       of the examining process.  You have demonstrated either an unwillingness
         or inability to conduct yourself in accordance with management's stated
19       expectations.  Therefore, it is my determination that your employment with
         the U.S. Department of Labor, Employment Standards Administration,
20       Office of Workers' Compensation Programs, be terminated.

21  (*Id*.)

22

ORDER- 13

1    Ms. Long's evaluation of Ms. Block's performance as unacceptable was based in

2 part on and echoed by other DOL employees' negative assessments of Ms. Block's

3 performance.  Specifically, Mr. Dempster, Ms. Johnson, Ms. Kirkland, Mr. Kotada, and

4 Ms. Waller all agree that Ms. Block's performance was not acceptable.  (Dempster Decl.

5 (Dkt. # 25) ¶¶ 3-6; Johnson Decl. (Dkt. # 27) ¶¶ 4-5; Kirkland Decl. (Dkt. # 28) ¶¶ 3-5;

6 Kotada Decl. ¶¶ 8, 18; Waller Decl. ¶¶ 3-5.)  Ms. Hornback also states: "Ms. Block's

7 work was inferior to most other new claims examiners I have trained, mentored, and

8 reviewed."  (Hornback Decl. ¶ 4.)

9    Despite these negative assessments, Ms. Block had previously received some

10 positive feedback from Mr. Kotada via email about her performance.  (Davis Decl. Exs.

11 5-12.)  For example, on February 21, 2007, Mr. Kotada emailed Anne as follows:

12       Anne, good job on keeping up with your follow ups (you have no follow
         ups older than 40 days). ☺
13

14 (Davis Decl. Ex. 5.)  In a similar vein, on July 17, 2007, Mr. Kotada emailed:

15       Anne, very good job on working on your Pt E cases (incl. your interims)—
         as you can see the total E inventory went down quite a bit in just one month
         (May to June).  Of course, you picked up a digit in July, so the inventories
16       naturally increased.  Keep up the good work, and as stated previously,
         everyone needs to finish up their >300s for this quarter.  Thx.
17

18 (Davis Decl. Ex. 11.)  The record contains a handful of other, similar email

19 commendations.  Mr. Kotada states that this type of encouragement is part of his

20 management style.  (Kodata Decl. ¶ 8.)  He explains:

21

22

1      While I was Ms. Block's manager, my goal was to provide her (and all my

2      new staff) with as much training and mentoring as needed.  Although Ms.
Block was not completing her work in a satisfactory manner, my style of
management is to encourage my employees, especially understanding that

3      the learning curve for a new Claims Exaimer is steep.  On occasion, when I
could, I did recognize when Ms. Block had done good work and told her so

4      – usually as it related to completing a specific task.

5    (*Id.*)

6  **J.**       **Second Informal and Formal EEO Complaints**

7      On December 10, 2007, Ms. Block filed a second informal EEO complaint

8  ("Second Informal EEO Complaint").[7]  (*See* Mittet Decl. Exs. 3, 6; Barry-Perez Decl. ¶

9  4.)  Shortly thereafter, on December 18, 2007, Ms. Block filed a second formal EEO

10  complaint ("Second Formal EEO Complaint").  (Mittet Decl. Ex. 4.)  On the cover sheet,

11  Ms. Block indicates that the sole basis of her Second Formal EEO Complaint is reprisal.

12  (*Id.*)  She did not check the box labeled disability.  (*Id.*)  In her Second Formal EEO

13  Complaint, Ms. Block states:

14      The US Department of Labor's (DOL) Seattle Energy Employees
Occupational Illness Compensation Program (EEOICP) District Office

15      located in King County Washington terminated my employment in direct
retaliation of a formal complaint I filed with the Civil Rights Division in

16      DC (filed on or about 10/10/07).

17  (*Id.* Ex. 4 at 13 ¶ 1.)  Ms. Block focuses on her termination as retaliation for her EEO

18  activity, but does not allege that the DOL terminated her employment on the basis of

19  disability.

20                _____

21        [7] The parties do not provide a copy of Ms. Block's Second Informal EEO Complaint.

22  (*But see* Mittet Decl. Ex. 3 (EEO Counselor's Summary Report of Second Informal EEO
Complaint).)

1

**K.      Present Lawsuit**

2

On December 29, 2008, Ms. Block filed the present lawsuit.  (Compl. (Dkt. # 1).)

3

In her complaint, Ms. Block pleads two claims.  First, Ms. Block alleges a discrimination

4

claim under the Rehabilitation Act of 1973:

5

> Defendant unlawfully discriminated against the Plaintiff because of her
> disability in the terms and conditions of her employment and by failing to

6

> priide [sic] her with reasoable [sic] accommodation of her disability, in
> violation of the Rehabilitation Act.

7

(*Id*. ¶ 34.)  Second, Ms. Block alleges a retaliation claim.  (*Id*.  ¶ 36.)  The DOL now

8

moves to dismiss Ms. Block's disability discrimination claims and moves for summary

9

judgment in its favor as to her retaliation claims.

10

**III.      ANALYSIS**

11

**A.      Motion for Leave to File Supplemental Declaration**

12

As a preliminary matter, the court considers Ms. Block's motion for leave to file

13

supplemental declaration.  Ms. Block requests leave to file a second declaration in

14

opposition to the DOL's motion.  Having considered the motion, and deeming responsive

15

briefing and oral argument unnecessary, the court grants the motion for the reasons that

16

follow.

17

In her motion, Ms. Block argues that the DOL raised a new argument in its reply

18

and at oral argument on its motion to dismiss and/or for summary judgment.  (Block Mot.

19

(Dkt. # 47) at 1.)  Specifically, Ms. Block contends that the DOL did not assert in its

20

motion to dismiss and/or for summary judgment that she did not exhaust her

21

administrative remedies in compliance with 29 C.F.R. § 1614.105(a).  Ms. Block explains

22

ORDER- 16

1    that she "was unable to present any evidence on the issue because defendant did not raise

2    this argument until its reply brief." (Block Mot. at 2.)

3            The court disagrees with Ms. Block that the DOL did not raise its exhaustion

4    argument under 29 C.F.R. § 1614.105(a) in its motion to dismiss and/or for summary

5    judgment. A review of that motion demonstrates that the DOL raised this argument and

6    the legal standards associated with it. (*See* Mot. at 12 n.1, 13-15, 22 n.7.) Ms. Block

7    correctly observes that the DOL primarily focused on its erroneous belief that Ms. Block

8    had not filed a formal EEO complaint, but this does not excuse Ms. Block's failure to

9    present evidence to counter the DOL's secondary arguments.

10           The court also notes that Ms. Block did not file her motion in a timely manner.

11   The DOL filed its reply on April 19, 2010, the court heard oral argument on May 14,

12   2010, and Ms. Block filed her motion on May 18, 2010. (*See* Dkt. ## 42, 45, 47.) To the

13   extent Ms. Block believed the DOL had improperly raised a new argument in its reply,

14   she would have been well advised to file a motion to strike or a surreply, or to take other

15   appropriate action, after reviewing the DOL's reply. This is particularly true in light of

16   the impending trial date. Ms. Block has offered no justification for her delay.

17           Nevertheless, the court will not turn a blind eye to the supplemental evidence

18   submitted by Ms. Block. The court is mindful that public policy favors the disposition of

19   cases on their merits. *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d

20   1217, 1228 (9th Cir. 2006) (en banc). By a similar token, disposition of a case on a more

21   complete record must be preferred to disposition on a less complete record. Therefore,

22   despite strong reservations, the court, in the exercise of its discretion, grants Ms. Block's

ORDER- 17

1    motion for leave to file supplemental evidence.  The court will consider Ms. Block's

2    supplemental declaration in the course of ruling on the DOL's motion to dismiss and/or

3    for summary judgment.[8]

4    **B.      Claims Alleged in the Complaint**

5          The court next considers the nature of the claims raised by Ms. Block in her

6    complaint.  This inquiry is necessary because Ms. Block does not pinpoint the bases of

7    her claims with specificity, but rather pleads her claims for discrimination and retaliation

8    with a broad brush.  On the one hand, the parties agree that Ms. Block's cause of action

9    for disability discrimination encompasses both a failure to accommodate claim and a

10   disparate treatment claim regarding the termination of her employment.  The parties also

11   agree that Ms. Block's cause of action for retaliation rests on the termination of her

12   employment.  On the other hand, Ms. Block does not expressly plead a hostile work

13   environment claim in her complaint and does not address the applicable legal standard for

14   such a claim in her briefing.  Counsel for Ms. Block confirmed at oral argument that Ms.

15   Block does not assert a hostile work environment claim.  On this record, the court holds

16   that Ms. Block does not allege a hostile work environment claim.

17   **C.      Disability Discrimination Claims and Exhaustion of Administrative Remedies**

18         A federal employee must exhaust his or her administrative remedies by filing a

19   claim of discrimination with the allegedly offending agency of the United States in order

20   _____

21        [8] The court notes that Ms. Block's supplemental evidence does not alter the court's
     ultimate ruling on the DOL's motion to dismiss and/or for summary judgment.  Even if the court
22   had denied Ms. Block's motion for leave to file supplemental evidence, the court would have
     granted the DOL's motion to dismiss and/or for summary judgment.

1    to preserve his or her right to maintain a suit for employment discrimination against the

2    agency.  *Leorna v. U.S. Dep't of State*, 105 F.3d 548, 550 (9th Cir. 1997).  The

3    procedures for submitting an employment discrimination claim are set forth at 29 C.F.R.

4    Part 1614.  Pursuant to those procedures, a federal employee complaining of disability

5    discrimination must consult an EEO counselor prior to filing a complaint in order to try

6    to informally resolve the matter, 29 C.F.R. § 1614.105(a), and the employee must initiate

7    this contact "within 45 days of the date of the matter alleged to be discriminatory," 29

8    C.F.R. § 1614.105(a)(1).  *See Kraus v. Presidio Trust Facilities Div./Residential Mgmt.*

9    *Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009); *Cherosky v. Henderson*, 330 F.3d 1243,

10   1245 (9th Cir. 2003); *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002); *Leorna*,

11   105 F.3d at 550-51.

12          Failure of the employee to comply with this pre-filing exhaustion requirement

13   within the 45-day window for each discrete act of discrimination generally results in the

14   employee losing the opportunity to recover for it in federal court.  *Kraus*, 572 F.3d at

15   1043; *Lyons*, 307 F.3d at 1105; *see Johnson v. U.S. Treasury Dep't*, 27 F.3d 415, 416

16   (9th Cir. 1994); *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985).  As the

17   Ninth Circuit teaches:

18

19

20

21

22

ORDER- 19

1

2

3

4

5

> The regulations further provide that an employee's failure to initiate contact with an EEO Counselor within 45 days is grounds for the dismissal of her EEO complaint, although "[t]he time limits in this part are subject to waiver, estoppel and equitable tolling."  Similarly, although the regulatory pre-filing exhaustion requirement at § 1614.105 "does not carry the full weight of statutory authority" and is not a jurisdictional prerequisite for suit in federal court, we have consistently held that, absent waiver, estoppel, or equitable tolling, "failure to comply with this regulation [is] . . . fatal to a federal employee's discrimination claim" in federal court.

6

7

8

9

10

11

*Kraus*, 572 F.3d at 1043 (citations omitted).  When an employee "pursues several disparate treatment claims, based on discrete discriminatory acts, the limitations period will begin to run for each individual claim from the date on which the underlying act occurs." *Lyons*, 307 F.3d at 1106-07.  Discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire," among others.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

12

13

14

15

16

17

18

19

20

21

22

    A federal court may consider an allegation or claim not raised by an employee in compliance with the pre-filing exhaustion requirement of 29 C.F.R. § 1614.105(a) if the allegation or claim is "like or related" to those claims originally raised.  *Scher v. Runyon*, Appeal No. 01942286, 1995 WL 17214376, at *2 (E.E.O.C. May 30, 1995); *see Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003).  "In determining if a later allegation or complaint is 'like or related' to the original complaint, the question arises as to whether the later allegation or complaint adds to or clarifies the original complaint and could have reasonably been expected to grow out of the original complaint during the investigation." *Scher*, 1995 WL 17214376, at *2.  In *B.K.B. v. Maui Police Department*, 276 F.3d 1091 (9th Cir. 2002), the Ninth Circuit set out a list of factors that courts should consider in

1 determining whether an employee has sufficiently exhausted particular allegations or

2 claims:

> [I]t is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred.  In addition, the court should consider plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case.

7 276 F.3d at 1091.[9]

8     The DOL moves to dismiss certain of Ms. Block's claims on the theory that she

9 failed to exhaust her administrative remedies prior to bringing suit in federal court.

10 (Reply at 3.)  The DOL concedes that Ms. Block exhausted two claims: harassment by

11 Ms. Hornback based on disability[10]; and termination of employment in retaliation for her

12 prior EEO activity.  (*Id*.)  By contrast, the DOL asserts that Ms. Block failed to exhaust

13 any claims alleging disparate treatment on the basis of disability or denial of reasonable

14 accommodation with respect to Ms. Block's transfer from the sixth floor to the fifth floor.

15     1.  <u>Ms. Block Did Not Administratively Exhaust Her Disparate Treatment and Failure to Accommodate Claims Predicated on Her Transfer to the Fifth Floor</u>

16     With respect to Ms. Block's disparate treatment and failure to accommodate

17 claims predicated on her transfer to the fifth floor, the court concludes that Ms. Block

18 failed to administratively exhaust these claims in accordance with the pre-filing

19

20     [9] Although *B.K.B.* does not address the pre-filing exhaustion requirement of 29 C.F.R. §
21 1614.105(a), the court finds it appropriate to consider these factors when evaluating questions of pre-filing exhaustion under 29 C.F.R. § 1614.105(a).

22     [10] As discussed in Part III.B, Ms. Block did not plead a hostile work environment claim in her complaint.

1   requirements of 29 C.F.R. § 1614.105(a).  First, Ms. Block's transfer to the fifth floor and

2   the DOL's denial of her request for accommodation constitute discrete acts that must be

3   separately exhausted.  *Cherosky*, 330 F.3d at 1245-1248; *Lyons*, 307 F.3d at 1106-07.

4   Second, Ms. Block's Informal EEO Complaint does not address these claims as it was

5   filed in August 2007 before Ms. Block's transfer in September 2007.  Third, Ms. Block's

6   Amended Informal EEO Complaint does not raise either a failure to accommodate claim

7   or a disparate treatment claim on the basis of disability.  Instead, her Amended Informal

8   EEO Complaint states that her transfer was a retaliatory act and makes no suggestion that

9   it was motivated by her hearing impairment.  Ms. Block has thus presented no evidence

10  to show that she raised these allegations during the pre-filing exhaustion process or that

11  the EEO investigated these allegations at any time.  Taken together, these considerations

12  indicate that Ms. Block failed to exhaust these claims.

13          Ms. Block contends that she "followed every administrative step necessary to

14  preserve her cause of action for disability discrimination," but she does not address these

15  discrete acts or explain on what basis she believes she exhausted her administrative

16  remedies pursuant to 29 C.F.R. § 1614.105(a) with respect to them.  (Resp. at 12.)  A

17  liberal reading of Ms. Block's Formal EEO Complaint suggests that she raised, or at least

18  alluded to, these claims in her Formal EEO Complaint.  Yet this does not obviate Ms.

19  Block's obligation to comply with the pre-filing exhaustion requirements of 29 C.F.R. §

20  1614.105(a).  Allowing an employee to sidestep the pre-filing exhaustion requirements

21  would interfere with the goal of promoting the non-judicial resolution of employment

22  discrimination claims.

1    Additionally, Ms. Block's disparate treatment and failure to accommodate claims

2    predicated on her transfer to the fifth floor cannot be considered "like or related to" the

3    claims in her Informal EEO Complaint or her Amended Informal EEO Complaint.  The

4    transfer of Ms. Block from the sixth floor to the fifth floor is factually distinct from Ms.

5    Hornback's alleged harassment of Ms. Block.  Likewise, the denial of Ms. Block's

6    alleged request for an accommodation is factually distinct from Ms. Hornback's alleged

7    harassment of Ms. Block.  These claims do not focus on Ms. Hornback's actions, but

8    rather involve different alleged perpetrators, and they occurred at a later date.  The legal

9    bases of these claims are also distinct from the harassment claim raised by Ms. Block in

10   her Informal EEO Complaint and her Amended Informal EEO Complaint.  Likewise, the

11   legal bases of these claims are distinct from the retaliation claim raised by Ms. Block in

12   her Amended Informal EEO Complaint.  In sum, these claims neither add to nor clarify

13   the claims raised in Ms. Block's Informal EEO Complaint and her Amended Informal

14   EEO Complaint and could not have reasonably been expected to grow out of her Informal

15   EEO Complaint or her Amended Informal EEO Complaint during the investigation.

16   *Scher*, 1995 WL 17214376, at *2; *see B.K.B.*, 276 F.3d at 1100.  On this record, the court

17   finds that Ms. Block's disparate treatment and failure to accommodate claims predicated

18   on her transfer to the fifth floor are not like or related to the claims of her Informal EEO

19   Complaint and her Amended Informal EEO Complaint.

20        The court concludes that Ms. Block did not administratively exhaust her disparate

21   treatment and failure to accommodate claims predicated on her transfer to the fifth floor.

22   Furthermore, Ms. Block presents neither argument nor evidence to support the

ORDER- 23

1    application of waiver, estoppel, or equitable tolling.  On this record, Ms. Block's failure

2    to comply with the pre-filing exhaustion requirements with respect to these claims is

3    fatal.  The court thus dismisses these claims.

4        2.   Ms. Block Did Not Administratively Exhaust Her Disparate Treatment Claim
             Predicated on the DOL's Termination of Her Employment

5        Next, with respect to Ms. Block's disparate treatment claim predicated on the

6    DOL's termination of her employment on the basis of disability, the court also concludes

7    that Ms. Block failed to administratively exhaust this claim.  The termination of Ms.

8    Block's employment is a discrete act, *Morgan*, 536 U.S. at 114, and Ms. Block was thus

9    obligated to comply with the relevant administrative exhaustion requirements.  She did

10   not do so.  While Ms. Block filed her Second Informal EEO Complaint in December

11   2007 within 45 days of the DOL's termination of her employment in November 2007,

12   she has presented no evidence to suggest that she raised her hearing impairment as a basis

13   for this adverse employment action.  Moreover, even assuming Ms. Block had raised

14   disability as a basis for her Second Informal EEO Complaint, she chose to focus

15   exclusively on retaliation as the basis for her Second Formal EEO Complaint and the

16   Civil Rights Center investigated only that alleged claim.

17       This disparate treatment claim cannot be considered like or related to the

18   retaliation claim raised by Ms. Block in her Second Formal EEO Complaint.  This

19   disparate treatment claim undeniably arises from the same adverse employment action as

20   Ms. Block's retaliation claim and it involves the same alleged perpetrators.  At its core,

21

22

ORDER- 24

1  however, the claim embraces a fundamentally different legal theory and basis for the

2  adverse employment action.  It thus is not like or related to Ms. Block's retaliation claim.

3       In sum, the court concludes that Ms. Block did not administratively exhaust her

4  disparate treatment claim predicated on the DOL's termination of her employment on the

5  basis of disability.  Once again, Ms. Block does not raise any argument to support the

6  application of waiver, estoppel, or equitable tolling.  Accordingly, the court dismisses this

7  claim.

8  **D.  Retaliation Claims**

9       1.  <u>Rule 56(c) Legal Standard</u>

10       Summary judgment is appropriate if "the pleadings, the discovery and disclosure

11  materials on file, and any affidavits show that there is no genuine issue as to any material

12  fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

13  56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los*

14  *Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of

15  showing there is no genuine issue of material fact and that he or she is entitled to prevail

16  as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her

17  burden, then the non-moving party "must make a showing sufficient to establish a

18  genuine dispute of material fact regarding the existence of the essential elements of his

19  case that he must prove at trial" in order to withstand summary judgment.  *Galen*, 477

20  F.3d at 658.  The non-moving party "must present affirmative evidence to make this

21  showing."  *Id.*  Furthermore, as the Ninth Circuit teaches, "[b]ald assertions that genuine

22

1   issues of material fact exist are insufficient," and a mere scintilla of evidence supporting

2   a party's position is also inadequate.  *Id.*

3       2.  Retaliation Claims

4       Courts apply the three-step *McDonnell Douglas* burden-shifting analysis to

5   retaliation claims.  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1088-89 (9th Cir. 2008)

6   (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Bergene v. Salt River*

7   *Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1140 (9th Cir. 2001).  Under

8   this analysis, the employee must first establish a prima facie case of retaliation.  If he or

9   she does so, the employer must come forward to articulate a legitimate, nonretaliatory

10  reason for the challenged action.  Finally, if the employer satisfies its burden, the

11  employee must show that the proffered reason is merely a pretext for retaliation.

12          a.  *Retaliation: Termination of Ms. Block's Employment*

13              i.  Prima Facie Case

14      "To make out a prima facie case of retaliation, an employee must show that (1) he

15  engaged in a protected activity; (2) his employer subjected him to an adverse

16  employment action; and (3) a causal link exists between the protected activity and the

17  adverse action."  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *see Coons v.*

18  *Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004).  The first two

19  elements are easily established here:  Ms. Block engaged in protected activity by filing

20  informal and formal EEO complaints.  *Ray*, 217 F.3d at 1241 n.3.  The DOL also

21  subjected Ms. Block to an adverse employment action by terminating her employment.

22  *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 970 (9th Cir. 2002).

ORDER- 26

1      The element of causation, however, presents a closer question.  To establish

2  causation for purposes of a retaliation claim, a plaintiff must present evidence that

3  engaging in the protected activity was one of the reasons for her firing and that but for

4  such activity she would not have been fired.  *Villiarimo v. Aloha Island Air., Inc.*, 281

5  F.3d 1054, 1064-65 (9th Cir. 2002).  The Ninth Circuit has recognized that in some cases

6  "causation can be inferred from timing alone where an adverse employment action

7  follows on the heels of protected activity."  *Id.* at 1065; *see Passantino v. Johnson &

8  Johnson Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000); *Yartzoff v. Thomas*,

9  809 F.2d 1371, 1376 (9th Cir. 1987).  Nevertheless, "timing alone will not show

10  causation in all cases[.]"  *Villiarimo*, 281 F.3d at 1065.  Instead, a plaintiff must show

11  that the termination "occurred fairly soon after the employee's protected expression."  *Id.*

12  (quoting *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009-10 (7th Cir. 2000)); *see

13  also Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

14      To begin with, the court notes that Ms. Long knew that Ms. Block had made both

15  informal and formal EEO complaints at the time Ms. Long decided to terminate Ms.

16  Block's employment.  (Long Decl. ¶¶ 5-6 & Ex. 2.)  The record is also clear that Mr.

17  Kotada knew of Ms. Block's EEO activity.  (Kotada Decl. ¶¶ 13-15.)  Although Ms.

18  Long and Mr. Kotada may not have known the precise contours of Ms. Block's

19  complaints, they were aware, at a minimum, that Ms. Block alleged that Ms. Hornback

20  had been harassing her.  (Kotada Decl. ¶ 16; Long Decl. ¶ 5.)  They were also aware that

21  Ms. Block's EEO complaints involved alleged harassment by Ms. Johnson and Mr.

22  Ronquillo.  (Kotada Decl. ¶ 15; Long Decl. ¶ 5.)  Finally, viewing the evidence in Ms.

1    Block's favor, Ms. Long and Ms. Kotada were aware that Ms. Block identified herself as

2    living with a hearing impairment, regardless whether they considered it a disability or

3    knew that related to Ms. Block's EEO complaints.  (Kotada Decl. ¶ 16; Long Decl. ¶ 8.)

4            With this background in mind, the court turns to the question of whether Ms.

5    Block has presented sufficient evidence to demonstrate causation for purposes of a prima

6    facie case of retaliation.  Ms. Block has not submitted direct evidence, but rather relies on

7    the temporal proximity between her EEO activity and her termination to show causation.

8    The parties agree that Ms. Block filed her Informal EEO Complaint in late August 2007,

9    and that the DOL terminated Ms. Block's employment in late November 2007.  This

10   reveals a temporal proximity of approximately three months.  Absent a bright-line rule, a

11   three-month period does not necessarily demonstrate sufficient temporal proximity to

12   establish a causal link.  *See Villiarimo*, 281 F.3d at 1065.  The court is persuaded,

13   however, that Ms. Block has presented additional evidence to strengthen the inference of

14   causation.  Specifically, the record reveals that Ms. Long made the preliminary decision

15   to terminate Ms. Block's employment in late October 2007 or early November 2007,

16   even though Ms. Long did not immediately follow-through with her decision.  (Davis

17   Decl. Ex. 4; *see* Long Decl. ¶ 10.)  This consideration tightens the sequence of events,

18   and suggests that Ms. Long arrived at her decision to terminate Ms. Block's employment

19   approximately two months after Ms. Block's initial EEO activity.  *Cf. Van Asdale v. Int'l*

20   *Game Tech.*, 577 F.3d 989, 1003 (9th Cir. 2009) (considering date decision-maker

21   initially intended to terminate employee as part of causation analysis).  On this record,

22   viewing the evidence in the light most favorable to Ms. Block, the court finds that Ms.

1   Block has met her burden to show a causal link.  Ms. Block has thus made out a prima

2   facie case of retaliation.

3            ii.  Legitimate, Nonretaliatory Reason

4        Next, the burden shifts to the DOL to show that it terminated Ms. Block's

5   employment for a legitimate, nonretaliatory reason.  *Davis*, 520 F.3d at 1094.  The DOL

6   has met its burden by presenting a range of evidence to support its stated reason for

7   terminating Ms. Block's employment: namely, that Ms. Block's performance was

8   unacceptable and did not warrant continued employment.  The record is replete with

9   evidence to support Ms. Long's assessment.  (*See* Dempster Decl. ¶¶ 3-6; Johnson Decl.

10  ¶¶ 4-5; Kirkland Decl. ¶¶ 3-5; Kotada Decl. ¶¶ 8, 18; Long Decl. ¶¶ 10-14; Waller Decl.

11  ¶¶ 3-5.)  Ms. Block does not dispute that the DOL has satisfied its burden to show that it

12  terminated her employment for a legitimate, nonretaliatory reason.  Therefore, the court

13  concludes that the DOL has satisfied its burden.

14           iii. Pretext

15       Finally, the burden returns to Ms. Block to show that the DOL's proffered reason

16  for her termination was a pretext for retaliation.  *Davis*, 520 F.3d at 1094; *Bergene*, 272

17  F.3d at 1140.  The critical issue at this stage is whether Ms. Block has produced sufficient

18  evidence to raise a triable issue of fact as to whether the reason proffered by the DOL for

19  terminating her employment was a pretext for unlawful retaliation.  *Bergene*, 272 F.3d at

20  1141.  A plaintiff may present either direct or circumstantial evidence to show pretext.

21  Direct evidence is evidence which, if believed, proves the fact of retaliatory animus

22  without inference or presumption.  *Id*. at 1142.  "Only a small amount of direct evidence

1   is necessary in order to create a genuine issue of material fact as to pretext." *Id.*  By

2   contrast, circumstantial evidence is evidence "that tends to show that the employer's

3   proffered motives were not the actual motives because they are inconsistent or otherwise

4   not believable."  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998).

5   "Circumstantial evidence of pretext must be specific and substantial in order to survive

6   summary judgment."  *Bergene*, 272 F.3d at 1142.

7       Here, Ms. Block relies on circumstantial evidence instead of direct evidence to

8   demonstrate a genuine issue of material fact as to pretext.  Notably, Ms. Block identifies

9   no direct evidence that Ms. Long terminated her employment due to retaliatory animus.

10   Instead, Ms. Block argues that she has shown pretext on two grounds.  (Resp. at 24.)

11   First, Ms. Block points to eight emails from Mr. Kotada, which she insists undermine Ms.

12   Long's asserted reason for terminating her employment.  Second, Ms. Block contends

13   that her assignment of a more difficult caseload following her EEO activity, paired with

14   her transfer to the fifth floor, demonstrates that the DOL "fabricated its 'poor

15   performance' allegation by ensuring that Ms. Block could not succeed."  (*Id.* at 23.)  Ms.

16   Block also submits evidence that she believes shows the DOL targeting other employees

17   for failure in similar fashion.  (*Id.* at 23-24.)

18       As a preliminary matter, the court finds that temporal proximity, standing alone, is

19   insufficient to raise a genuine issue of material fact as to pretext on the facts of this case.

20   The temporal proximity between Ms. Block's EEO activity and Ms. Long's termination

21   of her employment is approximately three months, with the preliminary decision

22   apparently having been made approximately two months after Ms. Block filed her

1  Informal EEO Complaint.  Thus, while the termination of Ms. Block's employment

2  arrives on the heels of protected activity, it lags some distance behind.  This is simply not

3  a case involving a short temporal proximity spanning days or even weeks from which a

4  strong inference can be drawn.

5        Moreover, the timing of Ms. Long's decision to terminate Ms. Block's

6  employment must be viewed in the context of her initial, one-year probationary period as

7  an employee.  There is no factual dispute that Ms. Block began her employment as a

8  probationary employee and that her probationary period was set to expire in November

9  2007.  Accordingly, Ms. Long had a limited time frame within which to evaluate Ms.

10 Block's performance as a probationary employee.  There is no evidence in the record to

11 suggest that Ms. Long made her decision with respect to Ms. Block's employment in a

12 premature manner or at an otherwise unusual time.  In light of the foregoing, temporal

13 proximity is insufficient to show a genuine issue of material fact as to pretext.

14       Next, the court finds that Mr. Kotada's email commendations of Ms. Block's

15 performance do not constitute evidence that is sufficiently substantial to demonstrate a

16 genuine issue of material fact as to pretext.  None of the emails submitted by Ms. Block

17 represent a formal evaluation of Ms. Block's overall performance by Mr. Kotada.  So too,

18 none of the emails touch on Ms. Block's performance in anything but a cursory manner.

19 Rather, these emails, even viewed in the light most favorable to Ms. Block, amount to

20 little more than the everyday pleasantries and encouragements of the employee-manager

21 relationship.  Stated differently, this evidence is not substantial.  Likewise, Mr. Kotada's

22 statement that he would be "more than happy" to be a reference for Ms. Block, although

1   he would hate to lose her if she decided on another position, does not meaningfully

2   address Ms. Block's performance.  Even viewed in the light most favorable to Ms. Block,

3   Mr. Kotada's emails are not sufficiently probative to give rise to a genuine issue of

4   material fact regarding pretext.

5         The court also finds that Ms. Long's alleged statement to Ms. Block—"soon you

6   won't have to worry about Hornback"—is not evidence that is sufficiently substantial to

7   show a genuine issue of material fact as to pretext.  Ms. Long allegedly made this

8   statement at a meeting with Ms. Block to discuss Ms. Hornback's visit to the fifth floor.

9   (Block Decl. ¶ 54.)  Viewing the evidence in the light most favorable to Ms. Block, the

10   court will assume that Ms. Long made the alleged statement and that Ms. Block

11   perceived it as a threat.  From this starting point, the court asks: are the statement and Ms.

12   Block's perception of the statement sufficiently specific and substantial to give rise to a

13   genuine issue of material fact as to pretext?  First, the statement, by its express terms,

14   does not address Ms. Block's employment at all and does not threaten her continued

15   employment.  Second, the statement does not expressly refer to Ms. Block's protected

16   activity.  Third, Ms. Block provides no additional factual context from which to draw the

17   inference that Ms. Long intended the statement as a threat in retaliation for Ms. Block's

18   protected activity.  In essence, this is an anodyne statement with no corresponding factual

19   context to shade its meaning.  Although this type of statement could, in some factual

20   circumstances, constitute specific and substantial evidence of pretext, it does not rise to

21   such a level here.  The court thus finds that this statement does not carry Ms. Block's

22   burden to show a genuine issue as to pretext.

ORDER- 32

1    Additionally, the court finds that Ms. Long's decision to terminate Ms. Block's

2  employment without prior notice and without a prior review is insufficient to show a

3  genuine issue of material fact as to pretext.  Ms. Block identifies no provision in the

4  collective bargaining agreement or performance standards that mandates notice or a

5  review prior to termination for a probationary employee.  (*See* Block Decl. Ex. 2.)

6  Without more, this is insufficient to show pretext.  Furthermore, even if Ms. Long had

7  erred in her interpretation, this does not necessarily demonstrate pretext where, as here,

8  the only evidence on this issue shows that Ms. Long terminated Ms. Block's employment

9  in accordance with the procedures as she understood them.  *See Stewart v. Henderson*,

10  207 F.3d 374, 378 (7th Cir. 2000).

11    Finally, the court finds that the assignment of a more difficult caseload to Ms.

12  Block following her EEO activity is not sufficiently specific and substantial evidence to

13  show a genuine issue of material fact as to pretext.  In her declaration, Ms. Block states

14  that Ms. Kirkland assigned three new social security digits to her in October 2007, and

15  asserts that "Standard Office Procedures for examiners with less than one year experience

16  is one social security digit; after two years, two, but never three."  (Block Decl. ¶ 55.)

17  Ms. Block provides no support for her contention that this approach to assigning

18  caseloads is a standard EEOICP policy or that the EEOICP followed this policy in

19

20

21

22

1    October 2007.[11]  Even assuming that Ms. Kirkland assigned Ms. Block a more difficult

2    caseload and assuming Ms. Block's worksheets associated with her new caseload

3    contained errors, the court is not persuaded that this is sufficient to show a genuine issue

4    of material fact as to pretext.  Ms. Block has not presented any evidence of a connection

5    between her EEO activity and her new caseload beyond the simple fact that one preceded

6    the other.  This evidence is not sufficiently substantial to satisfy Ms. Block's burden.

7    Likewise, Ms. Block fails to show how the DOL's alleged treatment of another employee

8    gives rise to a genuine issue of material fact as to pretext with respect to Ms. Block.[12]

9        In sum, the court concludes that Ms. Block has not satisfied her burden to present

10   specific and substantial evidence to show a genuine issue of material fact as to pretext.

11   Even viewing the evidence in the light most favorable to Ms. Block and considering the

12   totality of the evidence in the record, the court finds that Ms. Block has not met her

13   burden.  Therefore, the court grants the DOL's motion for summary judgment with

14   respect to Ms. Block's retaliation claim.

15

16

17   [11] In contrast to Ms. Block's assertions, Page Rebelo, a senior claims examiner, states that
     claims examiners are assigned "either two or three" digits.  (Davis Decl. Ex. 3 (Rebelo Dep.) at
18   13.)  "So if they're – if they're a new claims examiner, they may at first get one digit.  As they
     progress in their first year, they may move up to two digits.  After a year with the department,
     once they become a GS-11, they may jump up to three digits."  (Id.)

19

20   [12] In her declaration, Edna Lassair, a claims examiner, states that "[i]t was also common
     at the DOL for managers and/or senior claims examiners to assign large and/or more complex
     caseloads to employees they wanted to get rid of or did not like for one reason or another."
21   (Lassair Decl. (Dkt. # 38) ¶ 9.)  Ms. Lassair also states that "it was well known that many
     employees had been subjected to retaliation and discriminatory practices."  (Id. ¶ 6.)  These
22   generalized assertions are unsupported and do not give rise to a genuine issue of material fact
     regarding pretext.

1          *b.  Retaliation: Transfer to the Fifth Floor*

2          Ms. Block also asserts that her transfer to the fifth floor constitutes unlawful

3   retaliation in response to her EEO activity.  (Resp. at 21.)  The parties have submitted

4   less briefing on the subject of this retaliation claim.  Once again, however, the court

5   concludes that Ms. Block has made out a prima facie case of retaliation.  Viewing the

6   evidence in the light most favorable to Ms. Block, the court finds that: (1) Ms. Block

7   engaged in protected activity by filing EEO complaints; (2) she was subjected to an

8   adverse employment action by being moved to the fifth floor; and (3) she has shown

9   causation based on the close temporal proximity between her EEO activity and the

10  transfer.  Next, the court concludes that the DOL has satisfied its burden to present a

11  legitimate, nonretaliatory reason for the action.  Specifically, the DOL has presented

12  evidence that Ms. Long and Mr. Kotada, in conjunction with Mr. Sung, transferred Ms.

13  Block to the fifth floor in an attempt to resolve the conflict between Ms. Block and Ms.

14  Hornback within the context of the informal EEO complaint process.  (Kotada Decl. ¶¶

15  13-15; Long Decl. ¶¶ 5-7.)

16         The burden thus falls to Ms. Block to show that the DOL's proffered reason was a

17  mere pretext for retaliation.  She has not done so.  Even viewing the evidence in the light

18  most favorable to Ms. Block, the court finds that she has not presented either direct

19  evidence or specific and substantial circumstantial evidence that is sufficient to

20  demonstrate a genuine issue of material fact as to pretext.  On this record, the fact that

21  Ms. Long and Mr. Kotada decided to transfer Ms. Block in connection with Mr. Sung's

22  investigation and the informal EEO complaint process, without more, is insufficient to

1    show pretext.  To conclude that the DOL's attempt to informally resolve Ms. Block's

2    Informal EEO Complaint, absent additional indicia of pretext or other considerations,

3    constitutes sufficient evidence of pretext would interfere with the purpose of 29 C.F.R. §

4    1614.105(a), *i.e.*, "to try to informally resolve the matter."  Ms. Block points to no

5    additional evidence to demonstrate pretext.  To the extent Ms. Block contends that the

6    evidence she marshaled in an attempt to show that Ms. Long's termination of her

7    employment was a pretext for retaliation also constitutes evidence of pretext with respect

8    to this retaliation claim, the court disagrees.  This evidence, by and large, does not speak

9    to Ms. Block's transfer and, in any event, is insufficient to show pretext for the reasons

10   stated above.  Therefore, the court finds that Ms. Block has not shown a genuine issue of

11   material fact as to pretext with respect to her retaliation claim predicated on her transfer

12   to the fifth floor.  The court grants summary judgment in favor of the DOL with respect

13   to this claim.

14                          **IV.    CONCLUSION**

15          For the foregoing reasons, the court GRANTS the DOL's motion to dismiss and/or

16   for summary judgment (Dkt. # 23) and GRANTS Ms. Block's motion for leave to file

17   supplemental declaration (Dkt. # 47).  The court directs the clerk to enter judgment in

18   favor of the DOL.

19          Dated this 20th day of May, 2010.

20                                          _____

21                                          JAMES L. ROBART
                                            United States District Judge
22